

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-23-2004

# Olumuyiwa v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1538

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Olumuyiwa v. Atty Gen USA" (2004). *2004 Decisions.* Paper 785.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/785

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1538

ALHAJA OLUMUYIWA,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL;
U.S. DEPARTMENT OF JUSTICE
IMMIGRATION AND NATURALIZATION SERVICE,

Respondents

On Petition for Review of a Final Order of the
Board of Immigration Appeals
(No. A73-045-713)

Argued March 23, 2004

Before: ROTH, AMBRO, and CHERTOFF, Circuit Judges

(Opinion filed April 23, 2004)

Lawrence H. Rudnick, Esquire (Argued)
Steel, Rudnick & Ruben
1608 Walnut Street, Suite 1500
Philadelphia, PA 19103

        *Attorney for Petitioner*

Peter D. Keisler
Assistant Attorney General
Barbara C. Biddle, Esquire
Edward Himmelfarb, Esquire (Argued)
Appellate Staff Civil Division
Department of Justice, Room 9145
601 D Street, N.W.
Washington, D.C.   20530-0001

Douglas E. Ginsburg, Esquire
John M. McAdams, Jr., Esquire
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C.   20044

    *Attorneys for Respondents*

OPINION

AMBRO, Circuit Judge

Alhaja Olumuyiwa seeks judicial review of the denial by the Board of Immigration Appeals ("Board") of her motion to reconsider its earlier decision denying her application for asylum.  Because we conclude that Olumuyiwa has failed to demonstrate that the Board abused its discretion in denying her motion to reconsider, we affirm.

## I. Factual and Procedural History

Olumuyiwa, a Nigerian Muslim, applied for asylum based on persecution by

Nigerian Christians in her home state of Kaduna. On May 15, 1992, Olumuyiwa and her family were attending religious services in the Central Mosque in the town of Kabala, where she lived. Kabala, like much of Nigeria, has been the site of ethnic and religious riots. Christians entered the mosque, killed several people, and captured Olumuyiwa and various other Muslims in attendance. They then burned down the mosque. Olumuyiwa and the other prisoners were accused of having killed the secretary of Kabala's Christian association. They were taken to a cottage and forced to remove their clothing. Some were taken away and did not return.

Olumuyiwa escaped from the cottage. After walking naked for five miles, she was picked up by Muslims and driven to the village of Kesi, where she sent for a friend. Her friend informed her that her mother and brother had been hospitalized as a result of the riots. Moreover, she believed that Olumuyiwa's house had been burned down. With her friend's assistance, Olumuyiwa moved first to Lagos and thereafter to a remote village, where she received medical treatment. Of the six months she spent in Nigeria following her escape, two were in Lagos and four in the remote village.

Olumuyiwa entered the United States in December 1992 and filed an application for asylum. She subsequently learned that her twin sister was killed in 1996, allegedly in a case of mistaken identity.

An Immigration Judge ("IJ") sitting in Philadelphia denied Olumuyiwa's application for asylum in January 1998. The IJ determined that Olumuyiwa was

generally credible. He nonetheless found that she had failed to establish past persecution for the purposes of section 101(a)(42) of the INA, 8 U.S.C. § 1101(a)(42). In addition, he found that Olumuyiwa did not have a reasonable fear of future persecution. His decision was based in part on the State Department's most recent country report for Nigeria, which contained no information on discrimination against the Muslim majority in that country. He also cited a July 1997 Profile of Asylum Claims & Country Conditions for Nigeria ("the 1997 report"), which concluded that Christians could safely relocate within Nigeria and noted that the Nigerian government had taken steps to stop the rioting by sending in troops to support the police. Finally, he concluded that the murder of Olumuyiwa's sister was not based on mistaken identity.

Olumuyiwa timely appealed to the Board on September 3, 1998. On August 21, 2002, the Board entered an order dismissing her appeal. After reviewing the IJ's findings *de novo*, the Board concluded that Olumuyiwa had in fact suffered past persecution as a result of her religion.[1] It also recognized that once an alien has established past persecution, a presumption arises that she has a well-founded fear of continuing persecution. The burden thus shifts to the Government to rebut the presumption of a well-founded fear under 8 C.F.R. § 208.13(b)(1). The Government

---

[1]The Board explained: "[W]e find that [Olumuyiwa] has demonstrated past persecution. While there was a general unrest at the time of these events, it appears the Respondent has suffered past persecution specifically on account of her Muslim faith. Further, the treatment described by [Olumuyiwa] rises to such level as to be considered persecution."

may do so by demonstrating, by a preponderance of the evidence, either a fundamental change of circumstances such that the applicant no longer has a well-founded fear of persecution or that the applicant could avoid persecution by relocating within her country. 8 C.F.R. § 208.13(b)(1)(i) & (ii).

The Board found that Olumuyiwa could safely return to Nigeria. Specifically, it found that: (1) with the end of rioting, there were sufficient changes in conditions in Nigeria that Olumuyiwa no longer had a well-founded fear of persecution; (2) because Christians could safely relocate within Nigeria, Muslims could as well; and (3) the persecution suffered by Olumuyiwa did not present sufficiently compelling reasons for asylum absent a well-founded fear of persecution. In explaining its reasoning, the Board cited "the Immigration Judge's observation that if the report specifically states that Christians are able to safely relocate within Nigeria, the same must hold true for Muslims. In fact, the respondent in this case was able to relocate to Lagos." It also noted that newspaper articles submitted by Olumuyiwa ("particularly the later ones") indicated that the government had restored relative order in Nigeria.

Olumiywa did not appeal the Board's decision to this Court. Instead, she moved to reconsider and remand and requested a stay of deportation. In her motion, she challenged the Board's finding that conditions in Nigeria had fundamentally changed, arguing that the 1997 report did not reflect current country conditions. She also argued that the Board had erred in determining that the documents were sufficient to rebut the

presumption of well-founded fear arising from the Board's finding of past persecution. In support of this argument, she noted that the Immigration and Naturalization Service ("INS")[2] had introduced no documentary evidence on the issue and cited a current United Nations report detailing current instability in Nigeria. She urged the Board to remand the case for a determination whether conditions in Nigeria had fundamentally changed. In addition, she challenged the Board's application of 8 C.F.R. § 208.13(b)(1)(iii)(A-B), which governs discretionary grants of asylum.

The Board denied Olumuyiwa's motion on January 29, 2003 in a *per curiam* order. Olumuyiwa filed with us a petition for review of the denial of her motion to reconsider and remand.[3]

Because Olumuyiwa did not timely seek judicial review of the Board's initial decision, we have no jurisdiction to review it now. *Stone v. INS*, 514 U.S. 386, 394 (1995). We may, however, review the Board's denial of Olumuyiwa's motion to reconsider for abuse of discretion. *See INS v. Doherty*, 502 U.S. 314, 323 (1992) (holding that denial of a motion to reopen is reviewed for abuse of discretion); *Nocon v.*

---

[2]On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 41, 451, 471, 116 Stat. 2135 (Nov. 25, 2002). The Board of Immigration Appeals remains within the U.S. Department of Justice.

[3]The subject matter and appellate jurisdictions of this Court are governed by the "transitional rules" under section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). The Board had jurisdiction to review the IJ's decision under 8 C.F.R. § 3.1(b)(3), now codified at 8 C.F.R § 1003.1(b)(3), and 8 C.F.R. § 3.2(a), now codified at 8 C.F.R. § 1003.2(a).

*INS*, 789 F.2d 1028, 1033 (3d Cir. 1986) (reviewing denial of a motion to reconsider for abuse of discretion). The Board abuses its discretion when it applies an incorrect legal principle or makes factual findings that are arbitrary and capricious or lacking in substantial evidence. *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994). We may overturn the Board's decision only if it was "arbitrary, irrational, or contrary to law." *Sevoian v. Ashcroft*, 290 F.3d 166, 174 (3d Cir. 2002) (quoting *Tipu*, 20 F.3d at 582).

## II. Discussion

Olumuyiwa appeals the Board's denial of her motion to reconsider. Specifically, she challenges its findings that (1) country conditions in Nigeria have fundamentally changed, (2) she can safely relocate within Nigeria, and (3) she has failed to demonstrate compelling reasons for a grant of asylum in the absence of a well-founded fear of persecution. We consider these arguments in turn, after considering the Government's argument that we lack jurisdiction.

### A. Jurisdiction

The Government contends that we lack jurisdiction to consider Olumuyiwa's claims on appeal because her motion to reconsider was limited in scope and because she neglected to seek judicial review of the Board's August 2002 decision. We conclude to the contrary.

In the initial proceeding before an IJ, the applicant has the burden of establishing that she qualifies for asylum. 8 C.F.R. § 208.13(a). She may appeal an adverse decision

by the IJ to the Board. 8 C.F.R. § 240.15. The Board's decision is final unless reviewed by the Attorney General. 8 C.F.R. § 3.1(d)(6). The applicant may, however, seek review of the Board's decision through various channels. First, she may seek judicial review of the decision within 30 days after the Board's order. 8 U.S.C. § 1252(b)(1). The exclusive procedure for obtaining judicial review of a final deportation order is a "petition for judicial review . . . filed not later than 30 days after the date of the final order." IIRIRA § 309(c)(4)(c). Alternatively, she may file a motion to reconsider or a motion to reopen proceedings. The Board has "broad discretion to grant or deny such motions." *INS v. Doherty*, 502 U.S. 314, 323 (1992). Filing a motion to reconsider or reopen, however, does *not* toll the time for filing a petition for review. *Stone v. INS*, 514 U.S. at 394.

A motion to reconsider must be filed within 30 days after the mailing of the decision. To obtain reconsideration, the applicant must specify the "errors of facts or law" in the Board's decision, supported by "pertinent authority." 8 C.F.R. § 3.2(b)(1). A motion to reopen may be filed within 90 days after the Board's decision and must "state the new facts that will be proven at a hearing to be held if the motion is granted." It must be "supported by affidavits or other evidentiary material." 8 C.F.R. § 3.2(c)(1). Regardless whether the applicant filed a petition for review of the Board's decision with a Court of Appeals, she may appeal the Board's denial of a motion to reconsider or reopen. *Stone v. INS*, 514 U.S. at 394. The denial is reviewed for abuse of discretion.

8

*See Doherty*, 502 U.S. at 323 (1992);  *Nocon*, 789 F.2d at 1033.

The Government argues that we lack jurisdiction over Olumuyiwa's claims because she has failed to allege any specific abuse of discretion by the Board with respect to its denial of her petition and has instead challenged its August 2002 decision.  Our analysis of this issue has two parts.  First, we must determine whether Olumuyiwa complied with the requirements for a motion to reconsider.  While this inquiry is not formally jurisdictional in nature, a motion to reconsider that is procedurally infirm effectively forecloses judicial review because the Board does not abuse its discretion by denying such a motion.  Second, we must consider whether Olumuyiwa adequately alerted the Government to her arguments on appeal and thereby exhausted her administrative remedies.

**1.  The scope of our jurisdiction to review the denial of a motion to reconsider**

A motion to reconsider must specify the "errors of fact or law" in the Board's decision and must be supported by "pertinent authority."  8 C.F.R. § 3.2(b)(1).  Olumuyiwa's motion to reconsider specifically challenged the Board's decision with respect to two of its central findings.  First, she questioned the Board's finding that changed country conditions in Nigeria would permit her safe return, alleging that "[t]he Board erred by determining that [the documents it considered] are sufficient to rebut the presumption by a preponderance of the evidence that there has been a fundamental

9

change in circumstances such that the applicant no longer has a well founded fear of persecution." Second, she noted that the Board had not complied with a regulation permitting her "after the presumption of a well founded fear is rebutted to demonstrate compelling reasons not to return to her country or that she would suffer serious harm upon removal."

In assessing whether Olumuyiwa's motion to reconsider satisfied the applicable procedural requirements, we look to *Nocon v. INS*, 789 F.2d 1028 (3d Cir. 1986).[4] In that case, we concluded that because the petitioners failed to comply with the procedures governing motions for reconsideration, the Board did not abuse its discretion in denying their motion. We explained:

> [M]otions to reconsider must state the reasons for reconsideration and are to be supported by pertinent case precedent. In their motion, the petitioners failed to comply with these requirements. The petitioners not only offered conclusory statements as their reasons for reconsideration but also failed to support their reasons with appropriate case law. Because the petitioners were not in compliance with the prescribed regulations, the Board was justified in denying the motion on this ground and cannot be said to have abused its discretion.

*Id.* at 1033.[5]

---

[4]Although *Nocon* was decided before the Supreme Court's decision in *Stone*, we held that timely filing of a motion to reconsider does not suspend the time period for seeking judicial review of a deportation order. We nonetheless reviewed for abuse of discretion the Board's denial of the petitioners' motion for reconsideration.

[5]We declined to review a denial of a motion to reconsider on similar grounds in our unpublished opinion in *Abraha v. Ashcroft*, No. 02-1730, 2003 WL 231596 (3rd Cir. Feb. 4, 2003).

While Olumuyiwa might certainly have done more to support her petition with case law and might have identified more specifically the Board's errors, we conclude that her petition and attached memorandum were adequate to support review. In her memorandum to the Board, Olumuyiwa specifically noted that "[a] Motion to Re-Consider must state with particularity the errors of fact or law in the prior Board decision, with appropriate citation to authority and the record." She proceeded to list several purported errors.

For example, she noted that "[t]he only documents contained in the record regarding the then current country conditions [were those] by the Lawyer's Committee for Human Rights submitted by Appellant as part of Group Exhibit 4 and Profile of Asylum Claims and Country Conditions for Nigeria which was introduced by the Court at the conclusion of the testimony as Exhibit 5." These documents, Olumuyiwa asserted, "are not sufficient to overcome the presumption of a well-founded fear of persecution on the basis of the original claim."

Similarly, she argued in her motion to reconsider that she was denied the opportunity, conferred by 8 C.F.R. § 208.13(b)(I)(iii)(A-B), to demonstrate compelling circumstances precluding her safe return to Nigeria. Because the IJ had not recognized Olumuyiwa's past persecution, the presumption of well-founded fear never arose, and the IJ did not consider this issue. Olumuyiwa asserted that the Board should have remanded to permit her to develop the record. She buttressed her argument with the Board's prior

11

decision in *In re Chen*, Interim Dec. 3104 (BIA 1989), in which the Board held that when eligibility is based on past persecution, the favorable exercise of discretion may be warranted even if there is little likelihood of future persecution, taking into account such factors as past persecution, lack of family ties, and the alien's physical and emotional health.

We conclude that Olumuyiwa's identification of the Board's errors, while limited, complied with the procedural requirements applicable to motions for reconsideration. We therefore inquire whether the Board abused its discretion in rejecting her claims.

**2. Olumuyiwa's relocation claim**

Though we review the Board's denial of Olumuyiwa's motion to reconsider, we may consider only those claims that have been administratively exhausted. The Government alleges that Olumuyiwa waived one of her principal arguments by failing to raise it before the Board. In her brief to this Court, Olumuyiwa suggests that the Board misapplied a regulation that denies an applicant asylum if she may safely relocate within her country. In addition, she suggests that the Board's decision on this issue was unsupported by the record. The Government asserts that Olumuyiwa's relocation argument has not been exhausted and we therefore lack jurisdiction to consider it. We agree.

We may not review a final order under the INA "if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and

12

regulations." 8 U.S.C. § 1105a(c) (1994).[6]  This provision "bars [judicial] consideration

of particular questions not raised in an appeal to the Board." *Alleyne v. INS*, 879 F.2d

1177, 1182 (3d Cir. 1989).  An applicant must raise and exhaust her remedies as to each

claim or ground for relief in order to preserve it for judicial review.  *Id*.

   We addressed when an applicant waives an argument by failing to exhaust her

administrative remedies in *Abdulrahman v. Ashcroft*, 330 F.3d 587 (3d Cir. 2003).  In

that case, an asylum applicant argued that the IJ applied the wrong standard of proof to

his assertion of past persecution.  We reasoned that because he "failed to raise that issue

in his appeal to the Board, we [did] not have jurisdiction to consider the question." *Id*. at

594.  We rejected the applicant's argument that his general assertion that the IJ "erred as

a matter of law and discretion" alerted the Board to the specific issue raised on appeal.[7]

Conversely, we concluded that the applicant had not waived a second issue—whether the

IJ improperly acted as a witness at the removal hearing, reflecting bias in violation of his

due process rights.  We explained: "While Abdulraham's appeal to the Board did not

---

[6]The current version permits review "if the alien has exhausted all administrative
remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1).

[7]*Alleyne* is also instructive.  There the applicant's notice of appeal to the Board stated
that: (1) the IJ erred in "determining that said alien was deportable based upon his plea of
guilty to a Statute which the plea covered various offenses some deportable some not";
(2) "The Court erred in premitting [sic] the service to go behind the plea"; and (3) "The
Court erred in refusing to continue said matter." 879 F.2d at 1182-83.  We concluded that
"[n]one of the errors asserted in that document even arguably raise[d] the issue" before
them—namely, "whether the Immigration Judge made required findings of fact." *Id*. at
1183.

13

frame the matter in due process terms in so many words, both his notice of appeal and his later brief to the Board argued that the IJ impermissibly based her decision on her own speculative beliefs rather than on the evidence. As such, he adequately alerted the Board to the issue, thus preserving it for our review." *Id*. at 596 n.5.

We must therefore determine whether the issues raised by Olumuyiwa before the Board adequately alerted the Board to her relocation argument. Olumuyiwa argues that the Board misapplied its regulation providing for the denial of asylum, despite past persecution, if "the applicant could avoid future persecution by relocating to another part of the applicant's country . . . and under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. § 208.13(b)(1)(i)(B). She also argues that the evidence did not support the Board's finding that she could safely relocate within Nigeria. We conclude that Olumuyiwa's arguments more closely resemble Abdulraham's first (waived) claim than his second, which we deemed exhausted.

Olumuyiwa does not refer to the Board's application of the regulation in her motion to reconsider—nor does she even use the term "relocate." The summary paragraph that concludes her motion specifically challenges the Board's findings only as to changed country conditions and other compelling circumstances: "Appellant through counsel respectfully request[s] that the Board reconsider the decision dated August 21, 2002 and remand the record for further proceedings regarding the issue of changed country conditions and whether Appellant can demonstrate compelling reasons not to

14

return her to Nigeria or that she would suffer serious harm upon removal." She did not request a remand on whether internal relocation was possible.

To be sure, in suggesting to the Board that continuing violence would prevent her from safely returning to Nigeria, Olumuyiwa did not simply point to riots in her home town. Rather, she cited general political unrest in that country. Arguably, the Board should thereby have been alerted to her argument that she reasonably feared persecution upon return to *any* part of Nigeria. In finding that Olumuyiwa could relocate, however, the Board relied in part on Olumuyiwa's past relocation to Lagos.[8] Because its finding of changed country conditions was unrelated (at least in part) to its conclusion that relocation would be reasonable, the Board could not adequately have been alerted to the relocation claim. Moreover, there was no hint in the motion to reconsider of a challenge to the Board's interpretation of its regulatory framework. None of Olumuyiwa's claims adequately alerted the Board to this highly nuanced and specific textual argument. In sum, we perceive no ground on which to base the conclusion that the Board was asked to reconsider its relocation determination.

### B. Did the Board abuse its discretion in denying Olumuyiwa's motion?

---

[8]Olumuyiwa contests the Board's characterization of this issue. She notes that, of the six months that she purportedly had safely relocated in Lagos, four months were spent in a remote village. Furthermore, before the IJ, Olumuyiwa testified that she felt like a "chicken in [a] cage" during her stay in Lagos and that she "[could not] go out." Because we find that Olumuyiwa did not challenge the Board's finding in her motion to reconsider, we need not consider the merits of this claim.

15

Our consideration of Olumuyiwa's appeal is therefore constrained to two issues: whether the Board abused its discretion in finding that country conditions in Nigeria had changed, and whether Olumuyiwa was impermissibly denied an opportunity to demonstrate compelling reasons why she should not be returned to Nigeria in the absence of a well-founded fear of future persecution.

Section 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158, confers on the Attorney General discretion to grant asylum to an alien who is a "refugee." For the purposes of the INA, a refugee is a person who is "unable or unwilling" to return home "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

In order to demonstrate a well-founded fear of persecution, an applicant must satisfy three requirements: (1) she has a fear of persecution in her native country; (2) there is a reasonable possibility of suffering such persecution upon return to that country; and (3) she is unwilling to return to that country as a result of her fear. 8 C.F.R. § 208.13(b)(2)(i). A finding that the applicant has suffered persecution in the past results in a presumption that she has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The Government then bears the burden of demonstrating either (1) a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution, or (2) that the applicant could avoid future persecution by

16

"relocating" within her country.  8 C.F.R. § 208.13(b)(1)(ii).

Finally, an applicant may be granted asylum in the absence of a well-founded fear of persecution if she shows "compelling reasons for being unwilling or unable to return to the country" based on the severity of the past persecution, or "a reasonable possibility" that she may suffer other serious harm upon repatriation.  8 C.F.R. § 208.13(b)(1)(iii)(A), (B).

The Board found that although Olumuyiwa suffered past persecution, she was ineligible for asylum because country conditions in Nigeria had fundamentally changed and because she could safely relocate within the country.  For the reasons given above, we may not review the Board's finding as to Olumuyiwa's ability safely to relocate.  As the Government may demonstrate either changed country conditions *or* the possibility of relocation to rebut the presumption of past persecution, we need not consider the former.

We thus examine only the Board's determination that Olumuyiwa failed to show compelling reasons why she should not be returned to Nigeria in the absence of a well-founded fear of persecution.  Olumuyiwa argued in her motion to reconsider that, in light of the Board's finding that the presumption of well-founded fear was rebutted, 8 C.F.R. § 208.13(b)(1)(iii)(A-B) required it to permit her to demonstrate either compelling reasons why she should not return to her country or that she would suffer serious harm upon removal.  The regulation provides:

> An applicant described in paragraph b(1)(i) of this section who is not barred from a grant of asylum under paragraph (c) of this section, may

17

be granted asylum, in the exercise of the decision-maker's discretion, if:

(A) The applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution; or

(B) The applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.

Because the IJ found that Olumuyiwa had not suffered past persecution, he concluded no presumption of well-founded fear arose, and thus did not consider any part of this regulatory provision. The Board's disposal of this issue was therefore the first and only examination of whether discretionary asylum was appropriate. Olumuyiwa urged the Board to remand to permit the IJ to address the issue in the first instance.

In its August 2002 decision, the Board stated, "We also find[] the respondent's detention and problems in Nigeria do not present compelling reasons for a grant of asylum in the absence of a well-founded fear of persecution." It did not solicit input from the parties on this issue, nor did it explain the basis for its conclusion. Its consideration of "compelling circumstances" (part (A) of the regulation) was cursory, and it did not even invoke the possibility that Olumuyiwa might suffer serious harm upon removal (part (B) of the regulation).

We advise the Board, in future decisions, to explain in greater detail its findings with respect to discretionary asylum in order to facilitate judicial review. Nonetheless, we agree with the Government that there has been no suggestion, at any stage of Olumuyiwa's application or appeal, that extraneous factors warranting discretionary

18

asylum exist. Although the Board ultimately remanded for further evidence in *In re H*, 21 I. & N. Dec. 337, 348 (BIA 1996), it noted in doing so that "where cognizable issues of past persecution arise, in the interest of a fair and efficient adjudication of the case, the parties should ordinarily present sufficient evidence to allow the Immigration Judge to consider and resolve all relevant issues and avoid the necessity for remand if the Board ultimately determines that the applicant has shown past persecution." Though we do not hold that the Board is precluded from considering relevant evidence presented for the first time on appeal to it, there was no evidence before it or the IJ that points to the Board abusing its discretion in this case.

## Conclusion

The Board's treatment of Olumuyiwa's case was not as careful and considered as it should have been. Olumuyiwa did not, however, seek judicial review of the August 2002 decision. Our review of the Board's denial of a motion to reconsider is deferential, and we do not find an abuse of discretion in this case. We therefore deny Olumuyiwa's petition for review.